UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

OTTO D. MILLER,

                              Plaintiff

        -v-                                          1:19-CV-105

UNIVERSITY OF MARYLAND BALTIMORE
COUNTY,

                              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


APPEARANCES:                                 OF COUNSEL:

OTTO D. MILLER
Plaintiff *pro se*
9 Sherwood Drive
Queensbury, New York 12804

HON. BRIAN E. FROSH                          LILLIAN REYNOLDS, ESQ.
Attorney General for the State of Maryland
Attorneys for Defendants
200 Saint Paul Place
Baltimore, Maryland 21202

DAVID N. HURD
United States District Judge


**MEMORANDUM–DECISION and ORDER**

## I.    INTRODUCTION

On January 25, 2016, plaintiff Otto Miller ("Miller or "plaintiff") fell from the third story of

a house in Baltimore, Maryland.  Defendant the University of Maryland Baltimore County

("UMBC" or "defendant")'s hockey players lived in that house, as, temporarily, did plaintiff.

On January 25, 2019, plaintiff filed this complaint in this Court claiming diversity jurisdiction

under 28 U.S.C. § 1332.  Plaintiff alleges that defendant was negligent in:  (1) exposing him

to the house's environment; (2) allowing the hockey players to engage in the excessive and

repeated use of drugs and alcohol in the house in contradiction of school rules; and (3) failing to move plaintiff out of the hockey house despite his and his parents' many requests. Defendant has moved to dismiss plaintiff's complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for a lack of subject matter jurisdiction and 12(b)(2) for a lack of personal jurisdiction.

## II.  **BACKGROUND**

In the Spring of 2015, UMBC's head hockey coach, Jeff Pelus ("Pelus"), reached out to Miller to recruit him to play on defendant's school hockey team as a goaltender.  Dkt. 1, ¶ 1.  Plaintiff was not accepted by defendant for the fall semester but was able to secure admission for the spring semester of 2016.  *Id.* ¶ 3.  Because of his atypical starting date, plaintiff was unable to move into the school's standard dormitories in time for the first hockey practice of the semester on January 13, 2016.  *Id.*  ¶ 4.

Instead, Pelus arranged for Miller to move into the hockey team's off-campus house.  Dkt. 1, ¶ 4.  Plaintiff alleges that at the time he moved into the hockey house, he neither drank alcohol nor smoked marijuana.  *Id.* ¶ 5.  The same could not be said for his housemates.  The team threw several parties during plaintiff's time in the house, and these parties prominently featured marijuana and alcohol.  *Id.* ¶ 7.  At these parties, one of the hockey players, Zach Tracy ("Tracy"), would pressure or "threaten" plaintiff to try to get him to drink alcohol and smoke marijuana.  *Id.* ¶ 8(A).[1]  Plaintiff tried to avoid Tracy, and alleges he even went so far as to hide from him.  *Id.*

Because Miller was so uncomfortable with the atmosphere of the hockey house, he made several overtures asking UMBC to allow him to move into a standard dormitory and out of the house.  Dkt. 1, ¶ 8(B).  As a result, defendant originally scheduled plaintiff to move into

---

[1] Because the complaint contains two paragraphs numbered 8, the first will be referred to as ¶ 8(A) and the second will be ¶ 8(B).

a dormitory on January 25, 2016. *Id.* ¶ 10. However, a severe snowstorm led to defendant's cancelling the move. *Id.* Plaintiff asked to move to a dormitory regardless, but defendant denied him. *Id.*

Finally, on the same day, Miller acquiesced to Tracy's peer pressure and smoked marijuana. Dkt. 1, ¶ 11. On the night of January 25, the hockey house hosted another party, and plaintiff again succumbed to the pressure to smoke. *Id.* ¶ 12. This second dose proved to be catastrophic. Plaintiff's problems began with hallucinations, which according to another hockey player, Sean Gregory ("Gregory"), resulted in plaintiff "running around yelling about Jesus." *Id.* Plaintiff asked for help from Tracy, who rebuffed him. *Id.*

Gregory managed to calm Miller and made sure he went to bed. Dkt. 1, ¶ 13. Although no one appears to have seen how or understood why, plaintiff then fell out of the window in his room three stories to the ground below. *Id.* Plaintiff awoke at the hospital, where he learned that he had suffered a punctured lung, broken vertebrae, and a severed spinal cord, which has rendered him paralyzed below the chest. *Id.* ¶ 14.

As noted, Miller filed the instant action on January 25, 2019. Dkt. 1. On July 24, 2019, UMBC moved to dismiss the complaint under Rule 12(b)(1) and (2). Dkt. 15. The motion, having been fully briefed, will be considered on the parties' submissions without oral argument.

### III.   <u>LEGAL STANDARD</u>

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "In determining the existence of subject

matter jurisdiction, a district court may consider evidence outside the pleadings." *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014) (citing *Makarova*, 201 F.3d at 113). A *pro se* plaintiff is entitled to "less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (internal quotation marks omitted).

## IV.  **DISCUSSION**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  In other words, that Amendment limits a federal court's jurisdiction such that it "generally bars suits in federal court by private individuals against non-consenting states."  *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015).  That immunity extends not only to cases where the state itself is a named party, but also to cases where an action is against certain state agents or instrumentalities.  *Id.*

State universities are typically considered to be "an integral part of the government of the State" and thus when a state university is sued "the State is the real party."  *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990).  The University of Maryland is no exception to this rule, and thus any suit against it or its affiliates is in effect a suit against the State of Maryland.  *See Palotai v. Univ. of Md. Coll. Park*, 959 F. Supp. 714, 716 (D. Md. 1997).

Congress may nevertheless abrogate the States' Eleventh Amendment immunity under § 5 of the Fourteenth Amendment.  *Garcia v. SUNY Health Scis. Ctr.*, 280 F.3d 98, 108 (2d Cir. 2001).  It may only do so, however, if the statute abrogating immunity seeks to:  (1) prevent a State from depriving "any person of life, liberty[,] or property, without due process of law"; (2) prevent a State from denying any person "equal protection of the laws"; or (3) to

remedy or deter a State's violation of those substantive guarantees, so long as there is "congruence and proportionality between the [violation] to be prevented or remedied and the means adopted to that end." *Id.* (alteration in original) (internal citation and quotation marks omitted).

Alternatively, a state may waive its right to Eleventh Amendment immunity. *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004). A State's decision to waive its immunity is "altogether voluntary on the part of the" state. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999). Therefore, under the "stringent" test for finding waiver, a State must either voluntarily invoke the jurisdiction of the federal courts or else make a "clear declaration" that it intends to submit itself to that jurisdiction. *Id.* at 675-76.

Maryland has waived its immunity to tort claims brought against it "in a court of the State" under the Maryland Tort Claims Act ("MTCA"). MD. CODE ANN. STATE GOV'T § 12-104(a)(1). However, Maryland's waiver does not "waive any right or defense of the State or its units, officials, or employees in an action in a court of the United States . . . including any defense that is available under the [Eleventh] Amendment." MD. CODE ANN. STATE GOV'T § 12-103(2).

Moreover, that waiver is subject to certain limitations. As relevant to this action, those limitations require that: (1) a claimant seeking to assert a tort claim submit a written claim to the Treasurer of Maryland within one year after the injury accrues; (2) the Treasurer must deny that claim; and (3) the action must have been filed within three years after the injury's accrual. MD. CODE ANN. STATE GOV'T § 12-106(b). A failure to submit a written claim or to have that claim denied may be forgiven, however, if the State has actual or constructive

notice of the claimant's injury or the defect or circumstances giving rise to that injury. MD. CODE ANN. STATE GOV'T § 12-106(c)(2).

Under Maryland Rule of Procedure 2-101(b), "if an action is filed in a United States District Court . . . within the period of limitations prescribed by Maryland law and that court enters an order of dismissal . . . for lack of jurisdiction, . . . an action filed in a circuit court within [thirty] days after the entry of the order of dismissal shall be treated as timely filed" in Maryland. *Antar v. Mike Egan Ins. Agency, Inc.*, 58 A.3d 609, 619-20 (Md. Ct. Spec. App. 2012) (citing Maryland Rule of Procedure 2-101(b)). A typical tort claim under Maryland law "shall be filed within three years from the date it accrues . . . ." MD. CODE ANN. CTS. & JUD. PROC. § 5-101.

However, the MTCA's limitations on its waiver of sovereign immunity are not mere statutes of limitation. *See Johnson v. Md. State Police*, 628 A.2d 162, 164 (Md. 1993). Rather, the MTCA imposes conditions precedent which must be met prior to initiating an action. *Id.* Therefore, tolling statutes do not apply to MTCA claims. *Id.*

Miller's complaint is brought against UMBC, which is an instrumentality of the State of Maryland. *Palotai*, 959 F Supp. at 716. Thus, the Eleventh Amendment applies, and barring Maryland's waiver of its immunity under that Amendment or a congressional subrogation of that immunity, this Court lacks subject matter jurisdiction to hear plaintiff's claim. *Leitner*, 779 F.3d at 134.

Maryland has not waived its Eleventh Amendment immunity, because the MTCA expressly reserves those rights and instead opens Maryland only to tort claims in its own courts. MD. CODE ANN. STATE GOV'T §§ 12-103(2), 12-104(a)(1). Similarly, state common law tort claims are of course not supported by any act of Congress seeking to expressly abrogate a state's right to Eleventh Amendment immunity. Thus, this Court lacks jurisdiction over

6

Miller's claim of negligence against UMBC.  Plaintiff's complaint must thus be dismissed without prejudice.[2]

In an effort to save his complaint, Miller asserted in his response to the present motion four further bases to support this Court's jurisdiction:  (1) the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213 ("ADA"); (2) the Rehabilitation Act, 42 U.S.C. §§ 2000d-00d-7; (3) the Drug Free Schools and Communities Act ("DFSCA"), 20 U.S.C. § 1011i; and (4) 48 C.F.R. § 52.223-6.  UMBC correctly notes that plaintiff cannot amend his complaint through his opposition papers to include federal claims and thereby attain jurisdiction.  *See Cox v. Quick & Reilly, Inc.*, 401 F. Supp. 2d 203, 215 n.11 (N.D.N.Y. 2005).  However, in solicitude to plaintiff's *pro se* status, this Court will nevertheless address the vitality of these potential new claims.

First, Miller's argument that the ADA allows this claim because it abrogates UMBC's Eleventh Amendment immunity and entitles him to a cause of action in this Court fails. Plaintiff has alleged no facts that defendant discriminated against him because of his disability.  Instead, he alleges that defendant caused his disability, which is not an injury that the ADA was conceived to redress.  *See* 42 U.S.C. § 12101(b) (noting that the purpose of the ADA is to eliminate discrimination against individuals with disabilities, to "provide clear, strong, consistent, enforceable standards addressing discrimination" against those individuals, and to ensure that the Federal Government is involved in enforcing those standards through the "sweep of congressional authority" including the Fourteenth Amendment).

---

[2] Because this Court finds that it lacks subject-matter jurisdiction over plaintiff's claim, it need not consider defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.  However, this Court notes that plaintiff would have difficulty establishing personal jurisdiction over this or any other defendant in this Court for this claim because of the reasons outlined in defendant's motion to dismiss.

Indeed, Miller has not pointed to any authority under the ADA that allows him to recover for an accident that caused his disability, and this Court is aware of none. Moreover, even if plaintiff did present a cognizable ADA claim, the ADA does not abrogate UMBC's Eleventh Amendment immunity, and he therefore would run afoul of the same jurisdictional difficulties should he try to advance that claim. *See Nicolae v. Office of Vocational & Educ. Servs. For Individuals with Disabilities*, 257 F. App'x 455, 456 (2d Cir. 2007) (citing *Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001)). Thus, plaintiff could not successfully assert an ADA claim under these facts against these defendants.

Second, Miller's arguments rooted in the Rehabilitation Act are similarly unavailing. The Rehabilitation Act is intended to prevent the denial of benefits and other discrimination on the basis of "race, color, or national origin." 42 U.S.C. § 2000d. Nowhere has plaintiff made any allegations rooted in his race, skin color, or national origin, and thus this claim could not succeed on his present allegations.

Third, Miller's arguments rooted in the DFSCA fail because that statute does not create a private cause of action, either explicitly or implicitly. The DFSCA does not expressly establish a private cause of action but instead identifies means by which an institution of higher education could be defunded should it fail to adopt a program to prevent drug and alcohol abuse among its students, or alternatively receive grants should it implement a proper program. *See generally* 20 U.S.C. § 1011i.

Moreover, in determining whether to infer a cause of action from a statute that does not expressly provide for one,

> Congressional intent is the keystone as to whether a federal private right of action exists for a federal statute. Without a showing of congressional intent, a cause of action does not exist and courts may not create one[.] . . . [A c]ourt must begin its search for Congress's intent with the text and structure of the statute, and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided.

8

*Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 116 (2d Cir. 2007) (internal citations and quotation marks omitted).

The DFSCA is not constructed to be prohibitive. Instead, it is intended to foster—or coerce—the development of policies among colleges and universities. 20 U.S.C. § 1011i. Thus, there is no indication that Congress intended to create a cause of action under the DFSCA, and this Court would not be inclined to infer one. *See, e.g.*, *D.D. v. Stockton Univ.*, 2019 WL 3369709, at *1 n.2 (D.N.J. July 26, 2019) (noting that the DFSCA "does not create a private right of action") (citing *Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 35 (4th Cir. 2001)).

Fourth, Miller's reliance on 48 C.F.R. § 52.223-6 appears to be solely to illustrate that the federal government has the capacity to regulate schools, and he does not seem to assert any causes of action in reliance upon it. In any event, because § 52.223-6 provides regulations intended to ensure that drugs are not produced or used in the workplace of a government contractor, it is safe to say that it does not reach his alleged facts.

Thus, Miller's efforts to secure jurisdiction through federal laws and regulations are fruitless. Moreover, given the Eleventh Amendment's bar preventing his claims against UMBC, it is unlikely that he can find a way to salvage them by amendment. However, in deference to his *pro se* status, this Court will nevertheless grant him leave to amend his complaint under Rule 15(a)(2) to attempt to correct the defects in his pleadings. Should he find a means of asserting a claim which is not barred by Maryland's Eleventh Amendment immunity, this Court will consider it. Until then, his complaint must be dismissed in its entirety without prejudice.

## V.    <u>CONCLUSION</u>

This Court is not unsympathetic to Miller's circumstances.  To suffer the injury that he has suffered at his young age is one of the greatest burdens to bear.  But that injury cannot empower this Court with the authority to hear his case when the Constitution itself prohibits it. As a *pro se* plaintiff, he will be allowed to attempt to amend his defective complaint, dim as the prospects of reviving it may be.

However, Miller may elect to file suit in a circuit court in Maryland in the next thirty days.  Should he do so, the courts of Maryland will then consider whether to accept or reject his claim.  Alternatively, he may also seek to file suit against Pelus, Tracy, and/or the owner of the hockey house.  That claim would face no Eleventh Amendment bar, and plaintiff is free to pursue it wherever personal jurisdiction exists.

Any and all of these options are available to Miller, and he may proceed however he wishes.[3]  However, given this Court's lack of jurisdiction, plaintiff's claim must be dismissed without prejudice.

Therefore, it is

ORDERED that

1.  Defendant's motion to dismiss is GRANTED;

2.  Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE FOR A LACK OF SUBJECT MATTER JURISDICTION; and

3.  Plaintiff is granted leave under Rule 15(a)(2) to file an Amended Complaint by 12:00 p.m. on Tuesday, December 24, 2019.

If plaintiff fails to file an Amended Complaint by that date, the Clerk of Court is directed to enter judgment accordingly and close the file.

---

[3] In view of the circumstances and the very, very serious injuries received by plaintiff, it is strongly recommended that, if possible, he retain counsel in Maryland or New York City.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  December 10, 2019
        Utica, New York.